## JOHN DOE *vs.* COMMONWEALTH.

Suffolk. November 7, 1985. — December 17, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Contempt. Practice, Criminal,* Contempt proceeding. *Jurisdiction,* Contempt, Juvenile. *Superior Court.*

The restrictions of G. L. c. 119 concerning the disposition of charges against juveniles had no application to a charge of criminal contempt based on a juvenile's violation of an order entered in a civil action in the Superior Court. [422-423]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 1, 1985.

The case was reported by *Liacos,* J.

*Willie J. Davis* for the juvenile.

*Maria I. Lopez,* Assistant Attorney General, (*Joan Entmacher,* Assistant Attorney General, with her) for the Commonwealth.

WILKINS, J. A single justice of this court has reported to us a case that presents the question whether a complaint may be brought in the Superior Court against a juvenile for criminal contempt of an order entered in a Superior Court civil action. The juvenile moved in the Superior Court to dismiss the complaint, contending that the Commonwealth could only have proceeded against him as a delinquent child (G. L. c. 119, §§ 61, 74 [1984 ed.]), and that the Superior Court had no authority to consider the complaint for criminal contempt. A judge of the Superior Court denied the motion to dismiss. The juvenile brought this action seeking relief under G. L. c. 211, § 3.

The relevant facts, although not agreed on or found by the single justice (see Mass. R. Civ. P. 64, 365 Mass. 831 [1974]), are not in dispute. On August 30, 1984, pursuant to G. L. c. 12,

§ 11H (1984 ed.), the Attorney General obtained a Superior Court restraining order in a civil action brought against the juvenile, a white male, who was accused of harassing a black family that lived in a housing project in Somerville. The juvenile was ordered to refrain from harassing the black family and to stay clear of the housing project. Within one week, the Attorney General filed a complaint in the Superior Court against the juvenile for criminal contempt of court. The denial of the motion to dismiss, the petition for relief from the single justice, and the reservation and report followed.

A court has the inherent power to impose sanctions for contempt of its orders. See *Furtado* v. *Furtado*, 380 Mass. 137, 142-143 (1980); *Walton Lunch Co.* v. *Kearney*, 236 Mass. 310, 315-316 (1920). See also Mass. R. Crim. P. 44, 378 Mass. 920 (1979). The question here is whether any statute denies the Superior Court its inherent power to punish a juvenile for contempt of its own order.[1] A statutory mandate denying a court the power to try a person for criminal contempt of its orders should not be found by implication.

The juvenile relies on G. L. c. 119, § 74, which provides (as relevant here) that "no criminal proceeding shall be begun against any person who prior to his seventeenth birthday commits *an offense against the law of the commonwealth*" (emphasis supplied), unless proceedings against him as a juvenile have been begun and dismissed under G. L. c. 119, § 61. The juvenile concedes that a court has authority to punish a juvenile for direct criminal contempt, such as contumacious conduct before a judge in the courtroom. In the face of statutes concerning exclusive juvenile court jurisdiction over criminal charges against juveniles, courts elsewhere have uniformly recognized the right of a nonjuvenile court to punish direct contempt by a juvenile. See *Application of Balucan*, 44 Hawaii 271, 280 (1960) (juvenile refused to testify); *Bryant* v. *State*, 256 Ind.

---

[1] Because of the conclusion we reach we need not consider whether the Legislature may purport to eliminate a court's contempt jurisdiction without violating the separation of powers principles established by art. 30 of the Massachusetts Declaration of Rights. See *Opinion of the Justices*, 314 Mass. 767, 777-778, 782 (1943).

587, 591 (1971) (same); *Young* v. *Knight*, 329 S.W.2d 195, 200 (Ky. 1959) (same); *State* v. *DeLong*, 456 A.2d 877, 880 (Me. 1983) (same); *Thomas* v. *State*, 21 Md. App. 573, 578-579 (1974) (misconduct in the courtroom); *State* v. *Tripp*, 36 Or. App. 141, 144 (1978) (refusal to testify).

The juvenile argues that alleged contemptuous conduct committed in violation of a court order, but not in open court, is different, however, because it is an offense against the law of the Commonwealth which, pursuant to § 74, must first be presented through the juvenile justice system. A similar argument concerning the power of a Federal District Court to consider contempt charges against juveniles who violated a court order was rejected in *Matter of Williams*, 306 F. Supp. 617, 619-620 (D.D.C. 1969). We do not read the requirement in § 74 that juvenile proceedings be used initially for "an offense against the law of the commonwealth" as applying to the violation of a court order. Accordingly, the restrictions of G. L. c. 119 concerning the disposition of charges against juveniles do not apply to a charge of criminal contempt of court based on the violation of a court order.

A Superior Court judge who tries a contempt complaint against a juvenile has discretion, within constitutional limits, to impound papers in the case, to protect the juvenile's identity, and to close the proceedings to the public. If the juvenile is found guilty of contempt, the trial judge can consider whether the pleadings and other papers in the case should remain impounded. Here the public interest in knowing that violations of orders issued to protect civil rights will be punished will have to be balanced against the interests of the juvenile. As to disposition, assuming a finding of guilt, the judge will have all the discretion available to a Juvenile Court judge. We leave open the question whether a sentence of incarceration as an adult would be an appropriate disposition in such a proceeding. The petition for relief under G. L. c. 211, § 3, should be dismissed.

*So ordered.*