COMMONWEALTH VS. FLORENCE F., a juvenile.

Bristol. April 5, 1999. - May 5, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Child in Need of Services. Jurisdiction,* Juvenile Court, Contempt. *Juvenile Court,* Jurisdiction. *Contempt.*

Under the plain language of G. L. c. 119, § 39G, Juvenile Court judges are not authorized to issue direct orders to children in CHINS (children in need of services) proceedings; consequently, no provision in a CHINS case, including conditions of custody, constitutes a valid order sufficient to provide a basis for criminal contempt. [524-527]

COMPLAINT for contempt filed in the Taunton Division of the Juvenile Court Department on April 4, 1997.

After transfer of the matter to the Fall River Division, a motion to dismiss was heard by *John P. Corbett*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Elspeth B. Cypher*, Assistant District Attorney (*Steven Melo*, Assistant District Attorney, with her) for the Commonwealth.

*Amy M. Karp*, Committee for Public Counsel Services, for the defendant.

IRELAND, J. The present case raises a challenging issue that the Juvenile Court deals with on a daily basis — children in need of services (CHINS) proceedings. One of the most troubling questions about CHINS cases is whether the Juvenile Court has the authority to issue contempt orders for the violation of conditions of custody dispositions. Although we conclude that the Juvenile Court does not have the power of contempt for violation of conditions of custody because the plain language of G. L. c. 119, § 39G, as well as our case law, precludes Juvenile Court judges from issuing direct orders in CHINS cases, thereby prohibiting that court from charging a child with criminal contempt, we urge the Legislature to address and resolve this well-known and long-standing problem.

1. *Facts.* On March 3, 1997, a judge in the Taunton Division of the Juvenile Court Department adjudicated the juvenile a child in need of services pursuant to G. L. c. 119, §§ 21 and 39G. The judge issued a disposition order that permitted the juvenile to remain in her mother's custody on the condition that she attend school.[1]

On April 4, 1997, the juvenile's probation officer filed a criminal complaint with the Juvenile Court, alleging that the juvenile failed to attend school, and, therefore, "did wilfully, clearly, and intentionally disobey that order." She was charged as a delinquent by reason of criminal contempt and the matter was transferred to the Fall River Juvenile Court. The parties agreed that the juvenile was in violation of the conditions of custody because she failed to attend school. On January 6, 1998, the juvenile filed a motion to dismiss the complaint, which was granted by a judge in that court on February 2, 1998.[2] The Commonwealth timely filed a notice of appeal. We transferred the case from the Appeals Court on our own motion.

2. *Discussion.* In *Matter of Vincent,* 408 Mass. 527 (1990), we concluded that Juvenile Court judges may not directly order children to attend school in CHINS proceedings, and, therefore, may not hold these children in criminal contempt based on their failure to comply with such an invalid order. See *id.* at 531. In that case, the Juvenile Court judge at a CHINS proceeding directly ordered a child to attend school, threatening to send him to the Department of Youth Services (DYS) if he failed to do so. See *id.* at 528. Because "[n]owhere does [G. L. c. 119, § 39G,[3]] authorize a judge directly to order a child to attend school or to abide by other conditions the judge imposes except as a condition of custody," we concluded that a judge's direct

---

[1]The custody order of the disposition read: "WHEREAS the court, in making its determination as to an appropriate order of disposition, and taking into consideration the physical and emotional welfare of the child, has concluded that the said child should be permitted to remain with [her mother] . . . . It is hereby ORDERED that the subject child shall be so placed or committed subject to the following conditions of custody: (1) Attend school every day; (2) not be tardy; (3) obey all school rules; (4) cooperate with probation; (5) cooperate with DSS and (6) attend all counseling sessions."

[2]The Juvenile Court judge dismissed the case relying on *Matter of Vincent,* 408 Mass. 527 (1990), and the legislative intent of the CHINS statute, G. L. c. 119, §§ 39E-39J, that prohibits both direct orders against juveniles in CHINS cases and the criminalization of status offenders.

[3]General Laws c. 119, § 39G, provides that, upon adjudicating a child to be in need of services, "the court, taking into consideration the physical and

order to attend school was invalid, and, therefore, the child could not be charged with criminal contempt for violating that order. *Id.* at 531-532. We reaffirm the holding of *Matter of Vincent*, precluding Juvenile Court judges from issuing direct orders against a child, and address an issue not resolved in that case — whether the Juvenile Court may issue a complaint for criminal contempt for failure to comply with a condition of custody. We conclude that the Juvenile Court lacks the power to do so.

Criminal contempt for violation of an order requires a clear and unequivocal order, evidence that the defendant knew of the order and its repercussions, and intentional disobedience of the order. See *Furtado* v. *Furtado*, 380 Mass. 137, 144-145 (1980). Courts have the inherent power of contempt for violation of their orders. See *Doe* v. *Commonwealth*, 396 Mass. 421, 422 (1985). This inherent power, however, is recognized only if the underlying order is valid. See *Matter of Vincent*, *supra* at 530.

We conclude that the Juvenile Court does not have the power of contempt for failure to comply with conditions of custody in a CHINS case because there is no valid order on which contempt can be based.[4] Contempt requires a clear and unequivocal, or direct, order as its basis. See *Furtado* v. *Fur-*

emotional welfare of the child, may make any of the following orders of disposition:

"(*a*) subject to any conditions and limitations the court may prescribe, including provision for medical, psychological, psychiatric, educational, occupational and social services, and for supervision by a court clinic or by any public or private organization providing counseling or guidance services, permit the child to remain with his parents;

"(*b*) subject to such conditions and limitations as the court may prescribe, but not limited to provisions for those services described in clause (*a*), place the child in the care of any of the following: (1) a relative, probation officer, or other adult individual who . . . is found to be qualified to receive and care for the child; (2) a private charitable or childcare agency or other private organization, licensed or otherwise authorized by law to receive and provide care for [the child]; . . .

"(*c*) subject to the provisions of sections thirty-two and thirty-three and with such conditions and limitations as the court may recommend, commit the child to the department of social services . . . ."

[4]Although contempt is an inherent power of the court, see *Doe* v. *Commonwealth*, 396 Mass. 421, 422 (1985), because the Juvenile Court was created by the Legislature, we interpret the scope of its powers consistent with the legislative grants of power that are either "articulated expressly or . . . capable of being deduced by 'necessary and inevitable' implication." *School Comm. of Worcester* v. *Worcester Div. of the Juvenile Court Dep't*, 410 Mass. 831, 834 (1991), quoting *Police Comm'r of Boston* v. *Municipal Court of the*

*tado, supra* at 144-145. Because Juvenile Court judges may not issue direct orders in CHINS proceedings, see *Matter of Vincent, supra* at 531, no provision of the Juvenile Court in CHINS cases, even a condition of custody, can be a valid order sufficient to provide a basis for criminal contempt.

We look first to the language of the CHINS statute, which indicates that the Juvenile Court may not provide criminal sanctions, such as contempt, in CHINS cases. General Laws c. 119, § 39E, explicitly states: "Proceedings pursuant to sections thirty-nine E to thirty-nine I, inclusive, shall not be deemed criminal proceedings." Moreover, the CHINS statute prohibits the incarceration or detention of children so adjudicated. See G. L. c. 119, § 39G. General Laws c. 119, § 39G, reads: "A child found to be in need of services shall not be committed to any county training school. A child found to be in need of services shall not be committed to an institution designated or operated for juveniles adjudicated delinquent."[5] Because criminal contempt is punitive and could result in detention,

---

*Dorchester Dist.*, 374 Mass. 640, 663 (1978). We have interpreted the scope of the Juvenile Court's CHINS powers to be limited to the plain language of G. L. c. 119, §§ 39E-39G. See, e.g., *Matter of Gail*, 417 Mass. 321, 324 (1994) (Juvenile Court may proceed with CHINS disposition absent parental consent, because "[n]owhere in [the CHINS statute] is there an authorization for a parent or guardian to terminate the proceedings, nor even an implicit requirement of parental consent to the proceedings"); *Oscar F. v. County of Worcester*, 412 Mass. 38, 41 (1992) ("If the Legislature had intended that § 39G [permit the Juvenile Court to mandate private schooling], § 39G would not have limited a judge to ordering educational services for a child only when such services are directed as a condition of the child's remaining with his parents"); *School Comm. of Worcester v. Worcester Div. of the Juvenile Court Dep't, supra* at 837-838 (according to intent and plain language of the statute addressing Juvenile Court powers in CHINS cases, Juvenile Court had no authority to declare school policy unconstitutional). The express legislative policy of decriminalization and the absence of plain language permitting criminal contempt remedies, therefore, should be recognized and not abrogated.

[5]This is consistent with the Federal statute, 42 U.S.C. § 5633(a)(12)(A) (1998), which reads: "juveniles who are charged with or who have committed offenses that would not be criminal if committed by an adult or offenses (other than an offense that constitutes a violation of a valid court order . . .) . . . shall not be placed in secure detention facilities or secure correctional facilities." The 1980 amendment added the language "or offenses which do not constitute violations of valid court orders" to permit States to retain Federal funding if they incarcerate or detain juveniles who have violated valid court orders, provided that they follow the procedural due process provisions of 28 C.F.R. § 31.303 (1998); this amendment does not, however, provide an

charging a CHINS juvenile with criminal contempt is a remedy that directly contradicts these statutory provisions.

In addition, the plain language of the CHINS statute indicates the absence of the Juvenile Court's power of contempt for failure to comply with CHINS dispositions. See G. L. c. 119, §§ 39E-39J. The Legislature has expressly provided the options available for failure to comply with conditions of custody, including placement with DSS or counselling, but. excluding criminal contempt. See G. L. c. 119, § 39G. Nothing in G. L. c. 119, §§ 39E-39J, expressly permits the Juvenile Court to use its inherent power of contempt as a remedy for noncompliance with CHINS dispositions.[6]

Moreover, the policy underlying the CHINS statute supports the absence of the Juvenile Court's contempt power. The CHINS statute decriminalizes status offenses by focusing on providing nonpunitive care to address the problem of certain children. See St. 1973, c. 1073. Similarly, the Juvenile Justice and Delinquency Prevention Act of 1974, which provides financial assistance to States, based on compliance with enumerated conditions, for juvenile justice programs, sets forth the Federal policy to "develop and conduct effective programs to prevent delinquency, to divert juveniles from the traditional juvenile justice system and to provide critically needed alternatives to institutionalization."[7] 42 U.S.C. § 5602(b)(2) (1998). The enactment of the CHINS statute signified a switch from criminalizing truancy and children in need of services to providing protective care for children. See St. 1973, c. 1073.

We recognize that the absence of enforcement powers poses difficulties for the Juvenile Court judges, and we urge the Legislature to revisit this issue in order to give the Juvenile Court the authority it needs to address the serious problem of children in need of services in furtherance of the Com-

---

affirmative authority for the detention of juveniles for contempt of CHINS dispositions.

[6]Juvenile Court powers are limited to where it is authorized in a clear legislative intent or plain statutory language. See note 4, *supra*.

[7]The Juvenile Justice and Delinquency Prevention Act of 1974, 42 U.S.C. §§ 5601 et seq. (1998), provides guidelines for the treatment of juveniles, supporting the policy of deinstitutionalization. The Federal government issues State grants for juvenile justice plans provided that the State plan is committed to the deinstitutionalization of status offenders and provides secure detention only in limited circumstances when all less restrictive options have failed, in addition to other requirements. See 42 U.S.C. § 5633(a)(12)(A)-(B).

monwealth's "long-standing interest in protecting the welfare of children living within its borders." *Matter of Gail*, 417 Mass. 321, 326 (1994), quoting *Custody of a Minor*, 375 Mass. 733, 754 (1978).

Juvenile Court proceedings for children in need of services have created widespread frustration, concern, and criticism among judges. Juvenile Court judges often find themselves "between a rock and a hard place" in CHINS cases. On the one hand, they are asked to compel a child to attend school; on the other hand, they have no tools to make a child comply with their orders. CHINS "have always been a major headache to the juvenile court. They fall between the chairs, so to speak. They are not the dependent children who are clearly entitled to the full protection of the juvenile court. Neither are they law breakers entitled to whatever firm or lenient treatment the law or individual judge feels appropriate for such offenders." *In re Ronald S.*, 69 Cal. App. 3d 866, 869 (1977). Often a Juvenile Court judge finds himself "acting as a glorified babysitter . . . a frustrated judicial truant officer, [and] a reluctant enforcer of curfew laws," working in an extremely frustrating environment. *Id.* at 870.

Many other jurisdictions have been faced with similar concerns with CHINS programs and have reformed their proceedings, through both legislative and judicial amendments, to provide Juvenile Court judges with some mechanism to punish those who violate their orders.[8] To combat this problem, solutions have ranged from amending the CHINS statute to

---

[8]The main concern with permitting the Juvenile Court to charge juveniles in CHINS proceedings is "bootstrapping," which occurs when a CHINS juvenile is elevated to delinquent status by virtue of the failure to comply with CHINS conditions (status offenses). See Rothgerber, The Bootstrapping of Status Offenders: A Vicious Practice, 1 Ky. Children's Rights J. 1, 3 (1991). Jurisdictions which have recognized the inherent power of contempt generally have limited that power to circumstances when all less restrictive options have failed in order to prevent bootstrapping. See, e.g., *L.A.M.* v. *State*, 547 P.2d 827 (Alaska 1976); *In re Michael G.*, 44 Cal. 3d 283 (1988); *In re J.E.S.*, 817 P.2d 508 (Colo. 1991); *G.S.* v. *State*, 709 So. 2d 122 (Fla. Dist. Ct. App. 1998) (statute provides that juveniles may be held in contempt and placed in secure detention as permissible alternative); *In re G.B.*, 88 Ill. 2d 36 (1981), cert. denied, 456 U.S. 963 (1982); *In re B.L.*, 688 N.E.2d 1311 (Ind. Ct. App. 1997); *State ex rel. L.E.A.* v. *Hammergren*, 294 N.W.2d 705 (Minn. 1980); *In re M.S.*, 73 N.J. 238 (1977); *In re Jones*, 59 N.C. App. 547 (1982); *In re Darlene C.*, 278 S.C. 664 (1983); *In re D.L.D.*, 110 Wis. 2d 168 (1983). But see *In re Aaron D.*, 214 Wis. 2d 56 (Ct. App. 1997) (statute restricting use of

permit contempt to modifying the type of contempt or detention available to charging contempt only when all less restrictive options have failed.

We take judicial notice of several recent studies conducted in Massachusetts which point to the correlation between children in need of services and subsequent delinquency, and document the seriousness of the need for action to provide sufficient options to address the problem.[9] See In Jeopardy and at Risk: CHINS Cases in Massachusetts, Office of the Commissioner of Probation (Nov., 1998); Report on Truancy, BBA Task Force on Children in Need of Services (July, 1998); Supreme Judicial Court Commission on Juvenile Justice (June, 1994). More than fifty per cent of children adjudicated CHINS commit subsequent criminal offenses and are adjudged delinquent, highlighting the need for more effective methods of enforcement to prevent delinquency. See In Jeopardy and at Risk, *supra* at 10.

3. *Conclusion.* We conclude that the Juvenile Court lacks the power of contempt for the violation of CHINS dispositions and conditions of custody because of the absence of authority in the plain language of G. L. c. 119, § 39G, to issue both direct and contempt orders. However, in light of the systemic problems of CHINS proceedings presented above, we invite the Legislature to revisit this issue to consider adopting a procedure that better suits the needs of the children in need of protection, the families who are faced with this problem, and the judges who are asked to enforce the laws.

*Judgment affirmed.*

contempt for truancy to second or subsequent offenses is proper legislative restriction of court's inherent contempt power). Cf. *In re Ann M.*, 309 Md. 564 (1987) (contempt power in child protection cases is beyond court's discretion because it is inconsistent with statute and policy to decriminalize status offenses).

[9]The Supreme Judicial Court Commission on Juvenile Justice (June, 1994) concluded that the current CHINS system did not effectively address the needs of these children and recommended the removal of CHINS proceedings altogether from the judicial system and the creation of community boards and panels to resolve these cases. "In CHINS cases, the courts are asked to play the role of disciplinarian without the sanctions available in delinquency cases. The provision of discipline and the development of functional behavior within the family by both parents and children is the responsibility of the family and/or school with assistance as necessary from child welfare organizations." *Id.* at 12.