## In the Matter of Angela.

Plymouth. April 4, 2005. - August 31, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Child in Need of Services. Due Process of Law,* Burden of proof. *Statute,* Construction.

This court concluded that before a judge may extend up to six months a dispositional order with an out-of-home placement arising from an adjudication that a child is in need of services, G. L. c. 119, § 39G, third par., requires the judge to hold an evidentiary hearing and find by a preponderance of the evidence that the purposes of the dispositional order have not been accomplished and that an extension of the order would be reasonably likely to further those purposes. [58-66] Marshall, C.J., concurring in part and dissenting in part; Ireland, J., concurring in part and dissenting in part.

Petition filed in the Barnstable County/Town of Plymouth Division of the Juvenile Court Department on November 20, 2002.

The case was heard by *Louis D. Coffin,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Michael F. Kilkelly* for the child.

*Daniel J. Hammond,* Assistant Attorney General, for Department of Social Services.

The following submitted briefs for amici curiae:

*Thomas F. Reilly,* Attorney General, *& Daniel J. Hammond,* Assistant Attorney General, for Juvenile Court Department of the Trial Court.

*Marvin R. Ventrell,* of Colorado, *R. Susan Dillard,* Committee for Public Counsel Services, *& Barbara Kaban,* for Committee for Public Counsel Services & others.

Spina, J. In this appeal we decide that, before a judge may extend up to six months a dispositional order with an out-of-

home placement arising from an adjudication that a child is in need of services, G. L. c. 119, § 39G, third par., requires the judge to hold an evidentiary hearing and find by a preponderance of the evidence that the purposes of the dispositional order have not been accomplished and that an extension of the order would be reasonably likely to further those purposes.[1]

These proceedings began on November 20, 2002, when a school official from the town of Mashpee filed a petition in the Juvenile Court alleging that an eleven year old girl, whom we shall call Angela, was a child in need of services (CHINS) by reason of truancy. See G. L. c. 119, § 39E, third par. Represented by counsel, Angela waived her right to trial by jury in the first instance, see G. L. c. 119, § 39E, ninth par., and on January 3, 2003, admitted to sufficient facts to being truant. She was adjudicated a CHINS, and she waived her right to appeal for a trial de novo before a jury of six. See G. L. c. 119, § 39E, ninth par.; G. L. c. 119, § 39I. Disposition was continued to January 31, 2003, pending the report of the Juvenile Court clinic.

In the interim the judge ordered Angela be placed in (continued) custody of her mother, on condition that Angela attend school punctually and cooperate with agents of the Department of Social Services (department). See *Matter of Vincent*, 408 Mass. 527, 530-532 (1990) (judge may not directly order school attendance in CHINS case, but may order school attendance as condition of custody). The court clinic evaluation indicated that Angela refused to meet with the court clinician and that her mother had limited insight into Angela's problems. On January 31, 2003, the judge made a dispositional order of commitment to the department with a provision that Angela be placed outside the home.[2] See G. L. c. 119, § 39G, first par. (c).

---

[1] We acknowledge the amicus briefs filed by the Juvenile Court Department of the Trial Court and the Committee for Public Counsel Services, the National Association of Counsel for Children, and the Children's Law Center of Massachusetts.

[2] We do not know the precise terms of the original dispositional order, which has not been included in the record. A dispositional order for commitment to the Department of Social Services (department), with or without an order for out-of-home placement, requires written certification and findings

Neither the adjudication nor the original dispositional order was appealed.

In the twelve months that followed, the proceedings were complicated by Angela's persistent refusal to attend school, her refusal to participate in testing, and her hospitalization for depression. She was twice "readjudicated" a CHINS and remained in the custody of the department. Because no appeal was taken from those "readjudications," further details are not useful.

On February 13, 2004, Angela was again "readjudicated" a CHINS. That order is the subject of this appeal. No school official was present and prepared to prosecute the case. A representative of the department was present. Counsel for Angela requested the matter be dismissed for failure to prosecute. He requested, in the alternative, that an evidentiary hearing be held on the question whether Angela "continues to be a child in need of services" and that the judge make findings of fact on that issue. The matter was not dismissed, and there was no evidentiary hearing. No exhibits were received. The representative from the department reported, without being sworn, that Angela was in a foster home, was attending school in a different school district, and was doing everything asked of her. The department representative recommended keeping the current custody arrangement in place. The judge determined that the hearing was dispositional in nature, and although Angela had made significant improvement, past experience "remained relevant," and he wanted to ensure she would complete the current school year. The judge concluded that "the purposes of the [original] order had not yet been accomplished, and that continued placement — with its attendant school success — was reasonable." The judge "readjudicated" Angela a CHINS and extended for another six months the order placing custody of Angela with the department.[3]

_____

that "the continuation of the child in [her] home is contrary to [her] best interests and . . . [that] the department . . . has made reasonable efforts . . . to prevent or eliminate the need for removal from the home." G. L. c. 119, § 29C, first and fourth pars.

[3] On February 13, 2004, the judge did not make the additional findings required by G. L. c. 119, § 29C, first par., to be made annually in certain

Angela appealed, and we granted her application for direct appellate review.

*Discussion.* Angela argues that the "readjudication" hearing contemplated by the statute is a jury trial, and that the petitioner must prove beyond a reasonable doubt that the child continues to be in need of services. "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). We first address the scope of hearing that is involved.

1. *Scope of hearing.* General Laws c. 119, § 39G, first par., provides for a "hearing to determine whether a child is in need of services [CHINS]." General Laws c. 119, § 21, defines a CHINS as "a child below the age of seventeen who persistently runs away from the home of his parents or legal guardian, or persistently refuses to obey the lawful and reasonable commands of his parents or legal guardian, thereby resulting in said parent's or guardian's inability to adequately care for and protect said child, or a child between the ages of six and sixteen who persistently and wilfully fails to attend school or persistently violates the lawful and reasonable regulations of his school." Section 39G, first par., requires an adjudication of CHINS be made by proof beyond a reasonable doubt. If a child is adjudicated a CHINS, G. L. c. 119, § 39I, affords a jury trial de novo.

Section 39G, first par., specifies the types of dispositional

---

cases. That is, the judge should have "determine[d] . . . whether [the department] has made reasonable efforts to make it possible for the child to return safely to [her] parent." Angela has not raised the issue of this omission, the effect of which is not clear in any event, where the statute indicates that even if the judge made a finding contrary to what is required by § 29C, first par., such a finding would "not preclude . . . any appropriate order conducive to the child's best interest." G. L. c. 119, § 29C, fourth par. In addition, 110 Code Mass. Regs. §§ 4.65, 6.00-6.12 (2001), require that the department complete a service plan for a CHINS committed to the department at the time of the original commitment and every six months thereafter. The record does not reflect whether this was done.

orders that a judge may make following a CHINS adjudication. The dispositional order is a determination that is made separate and apart from the CHINS adjudication. See R.L. Ireland, Juvenile Law § 154 (1993 & Supp. 2004). Specifically, if the child requests a jury trial under § 39I, the jury make the adjudication of CHINS, but the judge makes the dispositional order.

Section 39G, third par., which is at issue in this appeal, states:

> "Any order of disposition pursuant to this section shall continue in force for not more than six months; provided, however, that the court which entered the order may, after a hearing, extend its duration for additional periods, each such period not to exceed six months if the court finds that the purposes of the order have not been accomplished and that such extension would be reasonably likely to further those purposes."

Section 39G, third par., does not require any periodic "readjudication" of the child's status as a CHINS. The statute does not use the words "redetermination" or "readjudication." It merely provides for a hearing prior to an extension of the order of disposition. The statute limits the scope of the hearing under § 39G, third par., to whether the purposes of the dispositional order "*have not been accomplished*" and whether an "extension would be reasonably likely to further those purposes" (emphasis added). The purposes of the dispositional order include "(a) preventing delinquency involvement; (b) fostering the pursuit of education; and (c) providing support to families during periods of emotional turbulence." R.L. Ireland, Juvenile Law, *supra* at § 145. Whether the purposes of the dispositional order have not been accomplished is not determined by the misconduct that gave rise to the CHINS petition, but by the needs of the child.

This procedure is in sharp contrast with other statutes that specifically provide for periodic redetermination or readjudication of the underlying basis for continued commitment. See, e.g., *Wyatt, petitioner*, 428 Mass. 347, 354-355 (1998) (petition under G. L. c. 123A, § 9, to determine if person remains sexually dangerous); *Thompson* v. *Commonwealth*, 386 Mass. 811,

814 (1982) (petition for recommitment of mentally ill and dangerous persons under G. L. c. 123, §§ 8 [*d*], 15 [*e*]); *Custody of a Minor (No. 1)*, 13 Mass. App. Ct. 66 (1982) ("redetermination" under G. L. c. 119, § 26, of child's current needs in care and protection proceeding). Unlike most other commitment proceedings, where the person is committed to the care of an agency or a department of the State that then determines the treatment the person will receive and the basis for continued commitment is revisited periodically, the Juvenile Court retains control over the treatment of the child who is adjudicated a CHINS and the dispositional order is revisited periodically. The plain language of § 39G, third par., does not require a readjudication of a child's status as a CHINS, that is, whether the child continues to be a runaway, a stubborn child, or a truant. It requires an inquiry into whether the purposes of the dispositional order have not been accomplished and whether an extension of the order reasonably can further those purposes.

Although § 39G, third par., speaks only of the power to extend the dispositional order, it requires the judge to look to whether the purposes of the dispositional order have been accomplished when making the determination to extend the order. Implicit in this procedure is the power to modify the original dispositional order and any subsequent dispositional order. Section 39G, third par., speaks of extending "[a]ny order of disposition," which necessarily includes dispositional orders made after the original order, and not just the original order. This implies that dispositional orders made after the original order may be different from the original order. If they are different, it is because they have been, and therefore may be, modified.

The power to modify dispositional orders is also intuitively necessary, and derives from the needs of a CHINS. Once a child has been adjudicated a CHINS, the focus of judicial inquiry is to identify the services needed by the child. Those services may have no apparent relation to the misconduct that gave rise to the CHINS petition, namely, running away, being a stubborn child, or being truant. The misconduct that was alleged in the CHINS petition often is just one symptom of a complex set of problems. For example, a child may have been truant because she has been staying home to care for a sibling or a

parent who is ill, or because of verbal abuse heaped on her by her peers. Even if a judge could order the child to attend school, and he may not,[4] that might solve the problem of truancy, but it does not address the underlying cause of the truancy or the needs of the child. There may be other causes or needs that are not immediately apparent at the time the dispositional order enters. Or, as is often the case, a child's needs may change, making it necessary to modify the dispositional order in order to accomplish its purposes. When deciding whether a dispositional order may be extended and modified, the judge necessarily must consider the complex question of the needs of the child and whether an extended, and in some cases, modified, order is necessary to meet those needs.

2. *Type of hearing.* The next issue involves the type of hearing that is required. Angela contends that the statute requires a jury trial, or at least an evidentiary hearing. The statute and its legislative history are silent on the issue. As previously noted, the statute provides for a jury trial at the adjudicatory stage of the proceedings, but no such provision is made for dispositional orders or their extension. When an extension of the dispositional order is sought, the statute calls for a hearing, and it calls on the judge to make findings. " 'Finding' is a word which imports the ascertainment of a fact in a judicial proceeding, and commonly is applied to the result reached by a judge. Sometimes, however, as a matter of interpretation it has been treated as a ruling of law" (citation omitted). *Garden Cemetery Corp.* v. *Baker*, 218 Mass. 339, 346 (1914). The findings called for by the statute necessarily will require a determination of a child's behavior in response to services offered, and perhaps a determination of the efficacy of both the provider and the services in question. Those are questions of fact. However, the existence of a factual question alone does not compel the conclusion that an evidentiary hearing is required.

We have recognized CHINS proceedings as intrusions on a child's fundamental liberty interest in the parent-child relationship that has due process implications. See *Matter of Gail*, 417

---

[4] A judge may not, in a CHINS proceeding, directly order a child to attend school. See *Commonwealth* v. *Florence F.*, 429 Mass. 523, 524 (1999); *Matter of Vincent*, 408 Mass. 527, 531 (1990).

Mass. 321, 327 (1994). See also *Santosky* v. *Kramer*, 455 U.S. 745, 753 (1982) (parents have fundamental liberty interest in care, custody, and management of their child). The fundamental requirement of due process is notice and the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo*, 380 U.S. 545, 552 (1965). However, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972). "[T]he specific dictates of due process generally require[] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976). See *Care & Protection of Robert*, 408 Mass. 52, 59 (1990) (applying *Mathews* factors to care and protection proceedings).

The first of the *Mathews* factors, the nature of the private interest, weighs heavily in favor of Angela. Not all CHINS cases involve an out-of-home placement or commitment to the department. Where, as here, Angela was committed to the department and the judge ordered that she be placed outside the home, the intrusion on Angela's fundamental liberty interest, albeit temporary, was, and remains, substantial.[5] See *Matter of Gail, supra* at 327-328 (placing custody of CHINS in department impacts fundamental liberty interest). Living apart from a parent for six months is a significant portion of one's childhood. Although the out-of-home placement is not permanent, the time away from one's parent cannot be recovered.

---

[5]Angela dedicated a portion of her brief to the due process rights of her mother. Because the mother has not appealed the extension order (she was summonsed at the commencement of these proceedings, but has been unrepresented throughout), we do not consider those claims. We note that, although there is no provision in the statute for appointment of counsel for a parent in CHINS cases, judges appoint counsel for parents in a CHINS case at least when custody becomes an issue. See *Matter of Gail*, 417 Mass. 321, 322 (1994).

Second, the risk of an erroneous deprivation is palpable. Here, the judge continued the out-of-home placement to ensure that Angela would complete the school year. The department representative reported that Angela was doing well in all respects and that Angela's mother had made arrangements for Angela to remain at her current out-of-district school for the rest of the year. However, the representative of the department said, "The current plan would be to maintain [Angela] where she is." The department representative expressed a preference for "the stability [of] the whole set up right now," which included placement in a foster home. Angela was not allowed to challenge the basis or soundness of the department assessment that led to the judge's finding that the dispositional order had *not* been accomplished, or to present any evidence to suggest that it had. An evidentiary hearing could have exposed the facts on which the department representative recommended an extension of the dispositional order and the out-of-home placement, that is, the facts on which the judge could find that the purposes of the dispositional order had not been accomplished. Although the judge properly considered findings from earlier stages of the proceedings, cf. *Custody of a Minor (No. 2)*, 22 Mass. App. Ct. 91, 94 (1986) (in "undertaking a § 26 review it is appropriate for the judge to apply all that has been learned since the previous hearing"), the statements made by the department representative at the extension hearing indicated a major attitudinal and behavioral turnaround by Angela that suggested the purposes of the dispositional order had in fact been accomplished.[6] The failure to conduct an evidentiary hearing created a high risk that an incorrect decision would be made, especially where the statute favors a single six-month order and requires a showing that the purposes of the dispositional order have not been accomplished before the order may be extended.

The third factor, the governmental interest involved, is also substantial: protecting the welfare of children. *Matter of Gail*, *supra* at 327. In the context of a CHINS petition based on truancy, the State has an interest in "assist[ing] and encourag-

---

[6]As stated in note 3, *supra*, the judge should have "determine[d] . . . whether [the department] has made reasonable efforts to make it possible for the child to return safely to [her] parent." G. L. c. 119, § 29C, first par.

[ing] the use by any family of all available resources to this end." G. L. c. 119, § 1. However, the burdens of an evidentiary hearing are minimal in this type of proceeding, and the Commonwealth, in addition to the child, would benefit from a decision that is more likely to be informed and nonerroneous.

We recognize that "many matters can lawfully — and satisfactorily — be heard on the papers," *Demoulas* v. *Demoulas*, 428 Mass. 555, 589 (1998), quoting *Equal Employment Opportunity Comm'n* v. *Steamship Clerks Union, Local 1066*, 48 F.3d 594, 608 (1st Cir.), cert. denied, 516 U.S. 814 (1995), and many extension hearings in CHINS cases, of which there are many types (parents may be petitioners), can be resolved acceptably without an evidentiary hearing, on the papers. However, where the requested extension involves the continuation of an out-of-home placement or a continued commitment to the department, the risk of making an erroneous decision that affects a fundamental liberty interest, without affording the child an evidentiary hearing, is unacceptable.

3. *Burden of proof.* Finally, we turn to the question of the burden of proof, which Angela contends should be the beyond a reasonable doubt standard, and should be borne by the petitioner. The statute requires proof beyond a reasonable doubt as to an adjudication of CHINS, but it is silent as to the burden of proof regarding dispositional orders and extensions of such orders. G. L. c. 119, § 39G. It also is silent regarding who bears the burden of proof. The legislative history sheds no light on the question.

There can be no doubt that the CHINS petitioner bears the burden of proof at the original dispositional hearing. We also think that the plain language of the statute implies that the petitioner also has the burden of proof at the extension hearing. Because the focus of the extension hearing is whether the purposes of the dispositional order have *not* been accomplished and whether an extension of the order would be reasonably likely to further those purposes, it makes no sense to place the burden on the child. From an adversary perspective, the child is trying to extinguish the order, not extend it, by arguing that the purposes of the dispositional order *have* been accomplished.

"When making the determination as to what standard of

proof is appropriate in a particular context . . . [we utilize] the due process analysis contained in *Mathews* v. *Eldridge*," *supra*. *Care & Protection of Robert*, *supra* at 58. Much of what we have said with respect to the need for an evidentiary hearing also applies to the question of the burden of proof. However, we emphasize that although serious, the impact on the child's fundamental right is not permanent. See *id.* at 67-68 (fair preponderance of the evidence standard, not clear and convincing evidence, applies to seventy-two-hour hearing in care and protection proceedings). Moreover, the use of an evidentiary hearing in cases involving out-of-home placements and observance of the legislative preference for a single six-month order should adequately reduce the risk of an erroneous decision. These observations, together with the fact that the inquiry at the extension hearing concerns satisfaction of the court's order, suggest that the proceedings are somewhat analogous to a violation of probation hearing, at which the burden of proof is a preponderance of the evidence. See *Commonwealth* v. *Holmgren*, 421 Mass. 224, 226 (1995).

Similarities to probation violation proceedings are numerous. Although CHINS proceedings "shall not be deemed criminal," G. L. c. 119, § 39E, their origins lie in the criminal law, see R.L. Ireland, Juvenile Law § 142 (1993 & Supp. 2004), and the proceedings retain many features of criminal trials. Both a CHINS proceeding and a criminal trial implicate fundamental liberty interests. A CHINS adjudication and a criminal conviction both require proof beyond a reasonable doubt, the former by statute, the latter by constitutional requirement. Both proceedings are concerned initially with "wrongful" conduct, although a CHINS no longer may be institutionalized. See *Commonwealth* v. *Florence F.*, 429 Mass. 523, 526 (1999). Like conditions of probation, a dispositional order is designed to prevent future misconduct by requiring remedial services and other conditions on the child's custody arrangements. Hearings to extend dispositional orders in CHINS cases and violation of probation proceedings in criminal cases both are concerned with compliance with a judge's order, the former by statute (§ 39G), the latter by agreement. *Commonwealth* v. *Holmgren*, *supra* at 227. The terms and conditions of a dispositional order, like the

terms and conditions of probation, may be modified. See *Buck-ley* v. *Quincy Div. of the Dist. Court Dep't*, 395 Mass. 815, 817-818 (1985). For these reasons we conclude that the fair preponderance of the evidence standard is consistent with the requirements of due process for extension hearings in CHINS cases.

We end with a practical consideration. The hearing in this case proceeded without a petitioner. The original petitioner, a Mashpee school attendance officer, was no longer involved because Angela had been placed in a foster home outside the school district. Someone readily identifiable must be available to assume the burden of proof. Because the scope of the hearing concerns compliance with a court order, much like a probation violation proceeding, and because probation officers are involved in CHINS proceedings and are familiar with court procedures generally and probation violation proceedings specifically, we think it is appropriate for a probation officer to have primary, but not necessarily exclusive, responsibility for prosecuting a request for an extension of the dispositional order. The judge has discretion to allow someone else to prosecute the matter, such as a department attorney.[7]

The order extending the dispositional order is hereby vacated, and the case is remanded to the Juvenile Court for further proceedings consistent with this opinion.

*So ordered.*

MARSHALL, C.J. (concurring in part and dissenting in part). For the reasons stated by Justice Ireland, *post* at 69-70 (Ireland, J., concurring in part and dissenting in part), I respectfully dissent from the court's holding that the "fair preponderance of the evidence standard is consistent with the requirements of due process for extension hearings in CHINS cases." *Ante* at 66.

At a so-called extension hearing, held pursuant to G. L.

---

[7]Although a department attorney may not be required to prosecute a case if the department is not a party and is otherwise not required to provide legal services, cf. *Charrier* v. *Charrier*, 416 Mass. 105, 110 (1993), the department may agree to do so where it is providing services. See 110 Code Mass. Regs. § 4.67 (1993).

c. 119, § 39G, third par., a judge must decide whether the child is in continued need of services and, if so, make a determination as to the then appropriate disposition for the child. The disposition ordered at a second (or subsequent) hearing may be quite different from the disposition ordered six months earlier. See *ante* at 60-61. In "modifying" a CHINS disposition, a judge may order, perhaps for the first time, that the Commonwealth remove a child from her home, against her will, and perhaps the will of her parents. See *post* at 70. Because such a disposition may impose a burden on a child's liberty interests that is different from, and far greater than, any burden imposed at the first adjudication, I conclude that a "preponderance of the evidence" burden is not consonant with the requirements of due process. See *Addington* v. *Texas*, 441 U.S. 418, 424 (1979) (clear and convincing standard required in civil cases where State seeks to infringe upon "particularly important individual interests"); *Care & Protection of Erin*, 443 Mass. 567, 571-572 (2005), and cases cited ("redetermination proceeding" involves "liberty interests" "identical to the interests present in the earlier proceeding" and therefore "clear and convincing" evidence is required to meet burden of proof).

The "preponderance of the evidence" standard also fails to protect a child at an extension hearing even where the result is a continuation, for an additional six months, of the same disposition ordered after the initial CHINS adjudication. Contrary to the court's suggestion, *ante* at 65, § 39G extension proceedings are not analogous to probation revocation proceedings. For defendants serving the probationary portion of a split sentence, "the revocation of probation is . . . a remedial sanction arising from the sentence imposed for the earlier offense." *Commonwealth* v. *Holmgren*, 421 Mass. 224, 227 n.1 (1995). Similarly, revocation of "straight probation" makes a defendant "subject to sentencing on [the underlying] charges in essentially the same light that existed at the time straight probation was originally imposed." *Commonwealth* v. *Bruzzese*, 437 Mass. 606, 618 (2002). Revocation, in connection with both forms of probation, relates back to the underlying crime. In contrast, a CHINS "extension" disposition is a new deprivation of liberty

that extends beyond the initial six-month term.[1] Nor, as the court suggests, *ante* at 62, are § 39G extension hearings — determinations of a child's needs for the next six months — similar to the seventy-two-hour hearings we discussed in *Care & Protection of Robert*, 408 Mass. 52 (1990). A seventy-two-hour hearing yields only a *temporary* order pending full adjudication.

General Laws c. 119, § 39G, third par., which authorizes extensions on a showing that a continued disposition would be "reasonably likely to further" the purposes of the original CHINS disposition, clearly and sensibly contemplates that a judge may appropriately consider the factual findings of the initial hearing. In light of this provision, I cannot agree with Justice Ireland that the appropriate burden at an extension hearing is "beyond a reasonable doubt." *Post* at 69, 71. At the initial adjudication, the burden of "beyond a reasonable doubt" serves to ensure that a child adjudicated in need of services is protected from wrongful allegations of fact.[2] At an extension hearing, the "allegations" concerning the child's behavior are not the focus of the hearing. Rather, the judge must determine whether the purposes of the initial disposition have been "accomplished" and whether additional treatment would aid the child. When a judge makes such a determination, which may involve the weighing of expert testimony, a burden of "beyond

---

[1]That judges may modify conditions of probation, see *ante* at 65-66, citing *Buckley* v. *Quincy Div. of the Dist. Court Dep't*, 395 Mass. 815, 817-818 (1985), does not change this analysis. In modifying conditions of probation, a judge may place additional limitations on a defendant's privilege to avoid a certain period of incarceration to which he already has been sentenced, or, in the circumstance of "straight probation," to avoid altogether a sentencing proceeding, for the underlying crime. See *Commonwealth* v. *Bruzzese*, 437 Mass. 606, 617-618 (2002); *Commonwealth* v. *Holmgren*, 421 Mass. 224, 227 n.1 (1995). In contrast, CHINS "extension" dispositions are for *sequential* statutorily authorized periods.

[2]General Laws c. 119, § 39G, first par., requires that "the court find [whether] the *allegations* in the petition have been proved at the hearing beyond a reasonable doubt" (emphasis added). General Laws c. 119, § 39E, second par. and third par., in turn, provide that an appropriate person "may apply for a petition . . . *alleging* that [a] child persistently runs away from the home . . . persistently refuses to obey . . . lawful and reasonable commands . . . persistently and wilfully fails to attend school or persistently violates the lawful and reasonable regulations of his school" (emphasis added).

a reasonable doubt" is not constitutionally required. See *Addington* v. *Texas, supra* at 429 (where proceeding requires determination of "the meaning of the facts which must be interpreted" and not "a straightforward factual question," clear and convincing standard more appropriate than proof beyond reasonable doubt). See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 392 Mass. 696, 698-700 (1984) ("beyond a reasonable doubt" standard appropriate in civil proceedings only where "individual's interests [are] pitted directly against the State and the interests of no third person [are] directly implicated"). See also *Santosky* v. *Kramer*, 455 U.S. 745, 769 (1982) (beyond reasonable doubt standard in termination of parental right cases may "erect an unreasonable barrier to state efforts" to care for children); *Custody of a Minor (No. 1)*, 377 Mass. 876, 885 (1979) (same).

Because the disposition at a G. L. c. 119, § 39G, extension hearing can have a dramatic impact on a child's liberty, and can place new and severe burdens on the child's (and potentially the parents') liberty interests, nothing less than a clear and convincing burden will suffice. I respectfully dissent from so much of the court's opinion as holds otherwise.

IRELAND, J. (concurring in part and dissenting in part). While I concur in the result reached by the court, I dissent on the issue of the proper burden of proof in a subsequent hearing to determine whether or not the purposes of the original order of disposition have been met. Because the stakes are so high in a case involving a child in need of services (CHINS), I believe the proper burden of proof at such a hearing is proof beyond a reasonable doubt.

Extension of the original order of disposition at a hearing pursuant to G. L. c. 119, § 39G, may have a serious impact on the child's liberty interest in family integrity, as evidenced by this case where the child was removed from her mother's home at such a hearing. Moreover, the stakes at these hearings are identical to those at the initial hearing and the judge has the same dispositional options: allowing the child to remain at home with or without conditions, placing the child in the care

of a third person, or transferring custody to the Department of Social Services (department).

Unlike care and protection cases, there are no permanent custody orders in CHINS cases. Rather, the Legislature expressly limited CHINS orders to only six months and required the court to hold a hearing every six months or the order expires. Furthermore, the Legislature provided that at *"any hearing* to determine whether a child is in need of services," the allegations must be proved "beyond a reasonable doubt" (emphasis added). G. L. c. 119, § 39G. The use of the phrase "any hearing" suggests that the Legislature did not intend to limit application of the standard solely to the initial adjudication. If the Legislature had wanted to apply a lower standard of proof at subsequent hearings, it could have done so.

In this case the original placement order required an out-of-home placement, and the extension after a subsequent hearing continued the same placement. However, there may be cases where the original placement order allows the child to remain at home, but the subsequent hearing changes custody from an in-home to an out-of-home placement. In such circumstances, the subsequent hearing has the same impact on a child as the initial adjudication hearing, and thus it is not irrational that the burden of proof be the same for both hearings.

Furthermore, my own experience as a judge in the Juvenile Court, where I personally observed the impact that an adjudication, or a "readjudication," could have on a child and family, leads me to believe that the stakes are too high to have any standard of proof less than beyond a reasonable doubt. The reality is that these cases can drastically change a child's life. While some CHINS cases, such as this one, involve truancy, others involve runaways and so-called "stubborn children," and the dynamics of each type of CHINS case are different. Of particular concern to me are the runaways, who are placed in the custody of the department. Often, these children will run away again and again to avoid State custody and the department has no authority to confine them for their own safety. Unfortunately, while on the run, these children often put themselves in harm's way, sometimes with fatal consequences. If protection of children is the Commonwealth's purpose, the

Commonwealth should be required to prove beyond a reasonable doubt that its assumption of custody will in fact protect the child even at a "readjudication."

In my view the higher standard of proof beyond a reasonable doubt reflects an awareness of the substantive rights at stake and strikes the proper balance among the competing interests. Accordingly, I respectfully dissent on the issue of the burden of proof, while concurring in the result of the court.