## IN THE MATTER OF GAIL.

Suffolk. February 8, 1994. - March 14, 1994.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Child in Need of Services. Minor,* Care and protection. *Constitutional Law,* Parent and child.

This court concluded that the parent of a child adjudicated in need of services under G. L. c. 119, §§ 39E et seq., has no right or authority under the statute to withdraw the child from the proceedings or from the court-ordered disposition, and that there is otherwise no prerequisite of parental consent to such proceedings or court-ordered dispositions resulting therefrom. [324-326]

A child's fundamental liberty interests in being free from confinement and in the parent-child relationship were not violated by proceedings and dispositions pursuant to G. L. c. 119, §§ 39E et seq., determining that she was a child in need of services, even in the absence of parental consent or a finding of parental unfitness. [326-328]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 14, 1993.

The case was reported by *Abrams,* J.

*Carol A. Erskine* for the petitioner.

*Judith Fabricant,* Assistant Attorney General, for the Commonwealth.

NOLAN, J. A juvenile, whom we shall call Gail, sought review in the county court of a Juvenile Court judge's denial of her motion to dismiss a petition issued pursuant to G. L. c. 119, § 39E (1992 ed.),[1] determining that she was a child in need of services (CHINS). A single justice reserved decision

---

[1]General Laws c. 119, §§ 39E, 39H, and 39I, were amended, effective July 1, 1993, by St. 1992, c. 379, §§ 10-12. We refer to the statute in effect in September, 1992, when the mother applied for the petition in this case.

and reported the matter to the full court. We affirm the Juvenile Court's denial of the motion to dismiss the petition. We present the facts.

On September 30, 1992, the mother, Kathleen B., applied to the Juvenile Court for a CHINS petition, alleging that Gail was a child in need of services. Counsel was appointed to represent the child. On the basis of the mother's allegations, the Juvenile Court issued the petition and continued the case to October 14, 1992, for a hearing on the merits. Gail was temporarily committed to the Department of Social Services (department).

The trial was held on December 31, 1992, after having been continued several times. Gail, through counsel, waived her right to a trial by jury. The judge conducted the proceeding, and concluded that Gail was a child in need of services. The judge ordered the child committed to the custody of the department and the case continued to April 1, 1993. The judge also ordered a ninety-day diagnostic assessment of Gail, and family counselling for all family members. Gail waived her right to appeal.

On February 2, 1993, the judge ordered another ninety-day diagnostic assessment, and continued the case to May 4, 1993, for a review of Gail's commitment status. A hearing concerning Gail's status was conducted on May 4 and June 2, 1993. On June 2, the judge concluded that Gail was still in need of services, and recommitted her until September 21, 1993. The case was advanced, and on August 3, 1993, after another hearing, the judge again committed Gail to the department until November 9, 1993.

On November 3, 1993, the Juvenile Court appointed a special advocate to investigate the case and make recommendations concerning Gail. Another hearing on the merits was held on November 9, 1993. The judge again recommitted Gail to the custody of the department until February 8, 1994.

On November 22, 1993, the mother appeared before the Juvenile Court to request custody of Gail. The judge appointed counsel for the mother. The appointed attorney

moved the court to dismiss the CHINS petition on the grounds that Gail's commitment to the department was conditioned on parental consent and that the purposes of the petition had been accomplished. The motion to dismiss was later joined by Gail, and a written motion and memorandum of law were filed with the Juvenile Court on November 30, 1993.

A hearing was held on November 30. A representative from the department and a probation officer were called to testify. A report of the court-appointed special advocate was entered in evidence. The judge's written order was issued on December 6, 1993. She ruled that the CHINS statute does not authorize a parent or child to dismiss a CHINS petition on the basis of the parent's withdrawal of consent after the child has been adjudicated in need of services. The judge further ruled that Gail was still in need of services. In support of this ruling, she found the following: Gail had been verbally and physically abusive to her mother; she had a history of running away from home and from her department placements, most recently on November 10, 1993; during her most recent flight from department custody, Gail threatened her sister with a knife when the sister indicated her intention to notify the department of Gail's whereabouts; she has a volatile temper which was displayed through impulsive outbursts and frequent tantrums, several of which occurred during her Juvenile Court hearings; and she frequently used marihuana and alcohol since she was twelve years old. The judge also stated: "From the date of the filing of the petition to the present, [Gail] [had] been placed at home on three separate occasions for a total of approximately two months . . . . She was not able to remain at her mother's home for any length of time without running away or getting into difficulty." The judge concluded that the purpose of the CHINS petition had not yet been accomplished, and she continued the child's commitment to the custody of the department until February 8, 1994.

Gail now argues that parental consent is a prerequisite to CHINS proceedings and court-ordered dispositions made

pursuant thereto, and that a parent may withdraw a child from the court-ordered custody of the department at any time. She argues that CHINS proceedings conducted absent parental consent violate her constitutional rights. We examine the issue.

1. *The CHINS statute.* Gail argues that G. L. c. 119, §§ 39E et seq., allows a parent of a child found to be in need of services to withdraw the child from the custody of the department. She asserts that a fair interpretation of the statute indicates a requirement of parental consent throughout CHINS proceedings. We disagree.

General Laws c. 119, § 21 (1992 ed.), defines a "[c]hild in need of services" as "a child below the age of seventeen who persistently runs away from the home of his parents or legal guardian, or persistently refuses to obey the lawful and reasonable commands of his parents or legal guardian, thereby resulting in said parent's or guardian's inability to adequately care for and protect said child . . . ." Sections 39E-39I provide the basis and guidelines for CHINS proceedings. Nowhere in these sections is there an authorization for a parent or guardian to terminate the proceedings, nor even an implicit requirement of parental consent to the proceedings.

Section 39E provides that a parent or guardian, a police officer, or a school "supervisor of attendance" may apply to the Juvenile Court for issuance of a petition seeking a determination that a child is in need of services. G. L. c. 119, § 39E. Thus, parental consent clearly is not required to initiate a CHINS proceeding.

Similarly, no parental consent is required for a CHINS petition to issue. Once an application for a petition is filed, the Juvenile Court is directed to "set a date for a hearing to determine whether a petition should issue, . . . notify the child of such hearing and . . . request the chief probation officer or his designee to conduct a preliminary inquiry to determine whether in his opinion the best interests of the child require that a petition be issued." G. L. c. 119, § 39E. A Juvenile Court judge then conducts this preliminary hearing

to determine whether there exists probable cause to believe that the child is in need of services. *Id.* If the judge determines that no probable cause exists, she must deny the petition. *Id.* If the judge determines that there is probable cause, she may issue the CHINS petition and schedule a trial on the merits, or she may decline to issue the petition if she finds that the best interests of the child would be met through "informal assistance." *Id.* If the judge concludes that probable cause exists but determines that informal assistance is in the child's best interest, she must have the consent of the child's parent or guardian to decline to issue the petition.

If a CHINS petition issues, the Juvenile Court sets a date for a trial on the merits to determine whether the child is a child in need of services. The trial is conducted before a jury, unless waived by the child, G. L. c. 119, § 39E, and the child must be present at the proceeding, accompanied by counsel. G. L. c. 119, § 39G. "If the court finds the allegations in the petition have been proved at the hearing beyond a reasonable doubt, it may adjudge the child named in such petition to be in need of services." *Id.* On a finding that the child is in need of services, the statute provides the judge three alternatives for disposition, none of which requires parental approval or consent: (a) he may permit that the child remain in the custody of the parent or guardian, subject to certain conditions; (b) he may place the child in the custody of a relative, probation officer, other qualified adult, private charitable or childcare agency, or private organization, which the judge finds to be qualified to care for the child; or (c) he may commit the child to the department. *Id.* The child has the right to appeal for a trial de novo, and thereafter may seek review in the Appeals Court. G. L. c. 119, § 39I.

The duration of any court-ordered CHINS disposition may not exceed six months. G. L. c. 119, § 39G. After this period, the court must conduct another hearing to determine whether the child is still in need of services. *Id.* If the child is still in need of services, the judge may order an extension of the original disposition for a period of up to six months. *Id.*

Extension of the disposition is not conditioned on parental consent, and there is no authorization for a parent to withdraw the child from any such disposition.

We conclude that the parent of a child adjudicated in need of services under G. L. c. 119, §§ 39E et seq., has no right or authority under the statute to withdraw the child from the proceedings or from the court-ordered disposition. There is otherwise no prerequisite of parental consent to CHINS proceedings or court-ordered dispositions resulting therefrom.

This conclusion is not inconsistent with the stated policy behind c. 119: "to provide substitute care of children only when the family itself or the resources available to the family are unable to provide the necessary care and protection to insure the rights of any child to sound health and normal physical, mental, spiritual and moral development." G. L. c. 119, § 1 (1992 ed.). The needs of the child, rather than the fitness of the parent or guardian, must be determined. Cf. G. L. c. 119, §§ 24-26; *Custody of a Minor (No. 1)*, 377 Mass. 876, 882 (1979) (finding of parental unfitness required where custody of child granted to the Department of Public Welfare pursuant to G. L. c. 119, §§ 24-26).

2. *Constitutional issues.* Gail asserts that, absent either parental consent or a finding of parental unfitness, the courts of the Commonwealth can not constitutionally commit her to the custody of the department. She argues that CHINS dispositions made absent consent or a finding of parental unfitness violate her fundamental interests in being free from confinement and in the parent-child relationship. We examine the issue.

The Commonwealth has a "long-standing interest in protecting the welfare of children living within its borders." *Custody of a Minor*, 375 Mass. 733, 754 (1978). Countervailing this legitimate State interest is a child's fundamental liberty interest in being free from confinement. See *Schall* v. *Martin*, 467 U.S. 253, 265 (1984). This is, however, a limited liberty interest: "[The] interest must be qualified by the recognition that juveniles, unlike adults, are always in some form of custody." *Id.*

CHINS proceedings, and dispositions made pursuant thereto, impose only minimal constraints on the child's limited interest in being free from confinement. The Juvenile Court may only order temporary alternative custody of the child; it is not authorized to order absolute confinement of the child. See G. L. c. 119, § 39G ("A child found to be in need of services shall not be committed to an institution designated or operated for juveniles adjudicated delinquent"). The purpose of CHINS proceedings is to "assure good substitute parental care in the event of the . . . temporary . . . inability . . . of parents to provide care and protection" for their child due to the child's disposition or conduct and her special or extraordinary needs. G. L. c. 119, § 1. This infringement on the child's limited liberty interest to be free from constraints is justified by the Commonwealth's legitimate interest in protecting the welfare of the children within its borders.

Gail argues that CHINS proceedings infringe her fundamental interest in the parent-child relationship. We have recognized such an interest. See *Care & Protection of Robert*, 408 Mass. 52, 61 (1990). However, as with the child's interest in being free from confinement, "[a] child's interest in the integrity of his or her family . . . is not absolute. The strength of this interest must be weighed in light of the ability . . . of the parent to further the best interests of the child . . . ." *Id.* at 62. CHINS proceedings serve to protect the welfare of children by providing treatment and care for them when their particular needs warrant attention outside of the home. Court-ordered CHINS dispositions are temporary, and thus result in only a minimal infringement of the child's interest in the family relationship. This infringement is justified by the Commonwealth's legitimate interest in protecting the welfare of children. See *Custody of a Minor, supra* at 754.

Gail argues that only on a finding that her parent is unfit may the Commonwealth infringe her liberty interests. The relevant cases cited by the child in support of this contention, however, relate to care and protection proceedings wherein

the State seeks to terminate the custody of the child's parents due to the parents' lack of fitness to care for the child. See, e.g., *Santosky* v. *Kramer*, 455 U.S. 745, 759-760 (1982) ("[T]he child . . . [is] also deeply interested in the outcome of that contest. But at the factfinding stage of the New York proceeding, the focus emphatically is not on [him or her]. . . . Rather, the factfinding hearing pits the State directly against the parents. . . . Victory by the State . . . entails a judicial determination that the parents are unfit to raise their own [child]"); *Care & Protection of Stephen*, 401 Mass. 144, 150 (1987) ("In determining whether custody may be removed from a biological parent and awarded to the department [pursuant to G. L. c. 119, § 24] the judge must find, by clear and convincing evidence, that the natural parent currently is unfit to further the welfare and the best interests of the child"). Thus, the circumstances of these cases are distinguishable from CHINS proceedings, which may only result in temporary alternative custody, and wherein the decision to order such alternative custody is made with respect primarily to the needs of the child, rather than to the fitness of the parent. Compare G. L. c. 119, §§ 39E and 39G, with G. L. c. 119, §§ 24-26. Orders of disposition, made pursuant to G. L. c. 119, § 39G, need not be predicated on a finding of unfitness of the child's parents.

We hold that Gail's interests in being free from confinement and in the parent-child relationship are not violated by CHINS proceedings and dispositions, even absent parental consent or a finding of parental unfitness.

3. *Conclusion.* We therefore affirm the determination of the Juvenile Court judge that proceedings conducted pursuant to G. L. c. 119, §§ 39E-39I, may not voluntarily be terminated by the parent of a child found to be in need of services.

*Judgment affirmed.*