IN THE MATTER OF HILARY
(and a consolidated case[1]).

Suffolk. October 2, 2007. - February 5, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Child in Need of Services. Juvenile Court,* Child in need of services. *Parent and Child,* Custody. *Practice, Civil,* Assistance of counsel.

Discussion of the fundamental liberty interest that parents have in the care, custody, and management of their children that is implicated in a proceeding adjudicating a child to be a child in need of services. [496]

Where a child has been adjudicated a child in need of services (CHINS), a parent is entitled, pursuant to G. L. c. 119, § 29, to counsel, including court-appointed counsel, at the dispositional phase of the CHINS proceeding if the judge is considering awarding custody to the Department of Social Services (department), and has a concomitant right to intervene in the case, given that custody within the meaning of § 29 is at stake in the dispositional phase of a CHINS proceeding [496-500], and given that the department is a party to the dispositional phase of a CHINS proceeding within the meaning of § 29 if custody is at issue [500-502].

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on June 14, 2007.

After consolidation, the case was reported by *Cordy*, J.

*Margaret Clapp Winchester*, Committee for Public Counsel Services (*Dawn M. Messer*, Committee for Public Counsel Services, with her) for the mother of Hilary.

*Claudia Leis Bolgen* (*Pedro R. Lara* with her) for the mother of Annamaria.

*Daniel J. Hammond*, Assistant Attorney General, for Department of Social Services.

*Michael F. Kilkelly*, for Annamaria, was present but did not argue.

*Lisa H. Thurau-Gray & Frank Laski*, for Parent/Professional Advocacy League & others, amici curiae, submitted a brief.

[1]In the Matter of Annamaria. Both names are pseudonyms.

IRELAND, J. The issue of first impression that we decide in these consolidated cases from the Worcester County and Essex County Divisions of the Juvenile Court Department, which are here on a reservation and report, without decision, from a single justice of this court, is whether, after a child is adjudicated a child in need of services (CHINS), a parent is entitled to counsel at the dispositional phase of the proceeding, if custody of the child is at issue. G. L. c. 119, § 39G. Two Juvenile Court judges denied, among other things, the indigent mothers' requests for such court-appointed counsel. Because we conclude that, pursuant to G. L. c. 119, § 29, parents are entitled to counsel at the dispositional phase of a CHINS proceeding if the judge is considering awarding custody to the Department of Social Services (department), and have a concomitant right to intervene in the case, see note 18, *infra*, we reverse the decision of the Worcester County Juvenile Court judge and remand that case for further action consistent with this opinion.[2]

1. *Statutory scheme.* An overview of the CHINS statute is necessary to understand the issues raised. CHINS proceedings are governed by G. L. c. 119, §§ 39E-39I,[3] discussed in detail in *Matter of Gail*, 417 Mass. 321 (1994).[4] "Section 39E provides that a parent or guardian, a police officer, or a school 'supervisor of attendance' may apply to the Juvenile Court for issuance of a petition seeking a determination that a child is in need of

---

[2]Oral argument in these cases was held on October 2, 2007. At a subsequent hearing in the Essex County Juvenile Court, on October 26, 2007, Annamaria's CHINS petition was dismissed, making the case moot. "However, we focus on the salient legal issues if only because they are important and capable of repetition." *Care & Protection of Erin*, 443 Mass. 567, 568 (2005), citing *Boston Herald, Inc.* v. *Superior Court Dep't of the Trial Court*, 421 Mass. 502, 504 (1995). The petitioners filed a joint brief.

[3]General Laws c. 119, § 21, defines a "[c]hild in need of services" as "a child below the age of seventeen who persistently runs away from the home of his parents or legal guardian, or persistently refuses to obey the lawful and reasonable commands of his parents or legal guardian, thereby resulting in said parent's or guardian's inability to adequately care for and protect said child, or a child between the ages of six and sixteen who persistently and wilfully fails to attend school or persistently violates the lawful and reasonable regulations of his school."

[4]In *Matter of Gail*, 417 Mass. 321, 321 n.1 (1994), the court used the version of the CHINS statute in effect in September, 1992. None of the statutory provisions relied on in this portion of the opinion has changed.

services. . . . Once an application for a petition is filed, the Juvenile Court is directed to 'set a date for a hearing to determine whether a petition should issue, . . . notify the child of such hearing and . . . request the chief probation officer or his designee to conduct a preliminary inquiry to determine whether in his opinion the best interests of the child require that a petition be issued.' G. L. c. 119, § 39E. A Juvenile Court judge then conducts this preliminary hearing to determine whether there exists probable cause to believe that the child is in need of services. *Id.*" *Matter of Gail, supra* at 324-325.

"If a CHINS petition issues, the Juvenile Court sets a date for a trial on the merits to determine whether the child is a child in need of services. The trial is conducted before a jury, unless waived by the child, G. L. c. 119, § 39E, and the child must be present at the proceeding, accompanied by counsel. G. L. c. 119, § 39G. 'If the court finds the allegations in the petition have been proved at the hearing beyond a reasonable doubt, it may adjudge the child named in such petition to be in need of services.' *Id.* On a finding that the child is in need of services, the statute provides the judge three alternatives for disposition . . . (*a*) . . . permit . . . the child [to] remain in the custody of the parent or guardian, subject to certain conditions; (*b*) . . . place the child in the custody of a relative, probation officer, other qualified adult, private charitable or childcare agency, or private organization, which the judge finds to be qualified to care for the child; or (*c*) . . . commit the child to the department. *Id.* The child has the right to appeal for a trial de novo, and thereafter may seek review in the Appeals Court. G. L. c. 119, § 39I." *Matter of Gail, supra* at 325.

If the judge decides to commit the child to the department, G. L. c. 119, § 39G, first par. (*c*), states in relevant part that "the court shall consider the provisions of [G. L. c. 119, § 29C,] and shall make the written certification and determinations required by [§] 29C." General Laws c. 119, § 29C, first par., requires, inter alia, that the judge shall "certify that the continuation of the child in his home is contrary to his best interests."

"The duration of any court-ordered CHINS disposition may not exceed six months. G. L. c. 119, § 39G. After this period, the court must conduct another hearing to determine whether

the child is still in need of services. *Id.* If the child is still in need of services, the judge may order an extension of the original disposition for a period of up to six months. *Id.*" *Matter of Gail, supra.* Moreover, under the statute, there is "no prerequisite of parental consent to [or right to withdraw a child from] CHINS proceedings or court-ordered dispositions." *Matter of Gail, supra* at 326.

Pursuant to G. L. c. 119, § 29B, first par., if a judge has extended the original disposition and the child is still in the department's care after twelve months, the judge must conduct a permanency hearing at which the department must file a permanency plan. Although the plan may be to return the child to the parent, it potentially could be to place the child in another permanent living arrangement or to place the child for adoption. *Id.* Under the plain language of G. L. c. 119, § 29, if the child is subject to a permanency plan, both the parent and child are entitled to counsel and, if either the parent or child is indigent, counsel will be appointed.

2. *Facts and procedure.* The parties submitted a joint statement of facts.

a. *Hilary.* In May, 2007, Hilary was the subject of two care and protection petitions. The first was dismissed, but as a result of the second, she was placed in a foster home. Within a few days, she ran away. Consequently, the department, which had temporary custody of Hilary pursuant to the care and protection matter, filed a CHINS petition.[5] A judge in the Worcester County Juvenile Court issued the CHINS petition, dismissed the second care and protection petition, and scheduled a hearing on the merits of the CHINS matter for June, 2007.

Hilary's mother, L.R., had been appointed counsel for the care and protection matters. At the June hearing, L.R.'s counsel in the care and protection matter filed an emergency motion to intervene and for court-appointed counsel for L.R. in the CHINS proceeding. The judge granted the motion to intervene so that L.R. could participate in the CHINS matter. Concerning the appointment of counsel, the judge stated that the law did not allow appointment of counsel, but that L.R. could be represented

---

[5]The record indicates that in May, 2007, Hilary was on probation in a delinquency matter.

by counsel in the matter if her court-appointed attorney would do so pro bono[6] or if the mother secured private counsel. L.R. filed a petition in the county court pursuant to G. L. c. 211, § 3, stating that the judge violated her statutory right to counsel pursuant to G. L. c. 119, § 29, as well as her right to due process and to equal protection of the laws, and asking the single justice to reverse the judge's denial of her motion for appointed counsel.

b. *Annamaria.* A Haverhill High School attendance officer, acting pursuant to G. L. c. 119, § 39E, third par., filed an application for a CHINS petition concerning Annamaria that an Essex County Juvenile Court judge issued on March 24, 2006.[7] Another judge (motion judge) adjudicated Annamaria a child in need of services in April, 2006, and committed her to the department until October, 2006, but she remained in her home. In September, 2006, a third judge ordered that Annamaria be placed outside of her home. At the scheduled October, 2006, hearing, Annamaria's mother, E.K., brought a motion to intervene and for court-appointed counsel, which the motion judge denied.[8] Annamaria stipulated that the goals of her CHINS petition had not been met and was committed to the department for another six months. E.K. appealed from the denial of her motion and in February, 2007, her appellate counsel filed a motion to reconsider her motion to intervene and for appointment of counsel, which also was denied. In his written findings, the motion judge stated that E.K. did not have a constitutional or statutory right to counsel, that she was not a party to the CHINS petition, that she had no enforceable legal rights in the CHINS proceeding, and that she had no right to be heard except at a judge's discretion. He also found that the department does not become a party to a CHINS proceeding whenever the court commits a child to the department. E.K. appealed from the denial of her motion for reconsideration. In April, 2007, the motion judge found that Annamaria was still a child in need of services but returned custody to E.K., with a hearing set for October 26, 2007. See note 2, *supra.* Annamaria

[6]Her court-appointed attorney was with the Committee for Public Counsel Services.

[7]Several judges have been involved in Annamaria's case.

[8]The judge stated that Annamaria's mother could be heard if she retained counsel privately or appeared pro se.

and E.K. filed a joint petition[9] in the county court pursuant to G. L. c. 211, § 3, asking the single justice to reverse the denial of E.K.'s motion to intervene and for court-appointed counsel, citing the same grounds as L.R.

3. *Liberty interest.*[10] We begin by noting that we are mindful that parents have a fundamental liberty interest in the care, custody, and management of their children. *Matter of Angela,* 445 Mass. 55, 61-62 (2005), citing *Santosky* v. *Kramer,* 455 U.S. 745, 753 (1982). See *M.L.B.* v. *S.L.J.,* 519 U.S. 102, 119 (1996). Due process is implicated whenever the State may deprive a parent of custody of a child. *Department of Pub. Welfare* v. *J.K.B.,* 379 Mass. 1, 3 (1979), and cases cited. Although in *Matter of Gail,* 417 Mass. 321, 327 (1994), this court held that a CHINS disposition is temporary and thus a "minimal infringement" on a child's liberty interest in the family relationship that is justified by the Commonwealth's interest in protecting children, we overruled that conclusion in *Matter of Angela, supra* at 62. In that case, we held that even where a child is placed outside the home for six months pursuant to a CHINS proceeding, the intrusion on the child's liberty interest in the parent-child relationship is "substantial." *Id.* A CHINS proceeding's intrusion on a parent's liberty interest in the parent-child relationship is no less substantial. See generally *Brum* v. *Dartmouth,* 428 Mass. 684, 709 (1999) (Ireland J., concurring) (children are "those most dear" to parents).

4. *General Laws c. 119, § 29.* Children involved in CHINS proceedings are entitled to counsel, including court-appointed

[9]We need not address whether Annamaria had standing to raise issues that solely affected her mother, E.K., as it has no bearing on our decision. In our discussion of the arguments raised, we shall refer only to E.K.

[10]In his reservation and report the single justice said, "The parties have been instructed to address the threshold question of whether relief pursuant to G. L. c. 211, § 3, is available." The brief of the Department of Social Services (department) did not address this issue. In a footnote, the department stated, "Without conceding that G. L. c. 211, § 3, is the appropriate vehicle to appeal from the denial of a motion to intervene, and in light of the Single Justice's order of reservation and report, and recognizing the likelihood that the substantive issues raised herein will recur, the Attorney General will assume, for the purposes of this brief, that these threshold questions have been (or will be) decided in favor of the justiciability of the Petitioners' claims." We consider the department's position to be a waiver of this issue.

counsel. G. L. c. 119, § 39F.[11] Although parents are notified of the proceedings in a CHINS case, G. L. c. 119, § 39E, seventh par., there is no explicit concomitant right to counsel given to parents under G. L. c. 119, §§ 39E-39I.

L.R. and E.K. argue that the right to appointed counsel is granted in G. L. c. 119, § 29, which states, in relevant part:

"Whenever a child is before any court under subsection C of section twenty-three or sections twenty-four to twenty seven,[12] inclusive, or section twenty-nine B . . . [t]he parent, guardian or custodian of such child shall have and shall be informed of the right to counsel at all hearings under said sections and *in any other proceeding regarding child custody where the department of social services* or a licensed child placement agency *is a party*, including such proceedings under sections five and fourteen of chapter two hundred and one; and if said parent . . . is financially unable to retain counsel, the court shall appoint counsel . . ." (emphasis added).[13]

---

[11]In 2003, the Legislature amended G. L. c. 119, § 39F, to provide a specific amount a parent has to contribute toward the costs of a child's appointed counsel. St. 2003, c. 26, § 169. If a parent is indigent but able to contribute something toward the cost of court-appointed counsel for the child, the court shall make the parent pay a reasonable amount. *Id.*

The department argues that had the Legislature wanted to provide counsel to parents in CHINS cases, it could have included that right in its 2003 amendment to § 39F, and that finding a right to counsel for parents in CHINS cases under G. L. c. 119, § 29, would render § 39F superfluous. As discussed *infra*, under § 29 a child is granted the right to counsel only pursuant to G. L. c. 119, §§ 23 (C), 24-26, 27, and 29B. Thus § 39F is not mere surplusage.

[12]General Laws c. 119, § 26A, was inserted by St. 1999, c. 3, and deals with the registration of foster parents. Thus, although § 26A is incorporated by reference in G. L. c. 119, § 29, it has nothing to do with CHINS proceedings. We note that § 29 has not been amended since 1984 and thus does not reflect the 1991 addition of § 26A.

[13]General Laws c. 119, § 23 (C), concerns orders of a Probate and Family Court granting the department responsibility for a minor. General Laws c. 119, §§ 24-26 and 27, concern care and protection proceedings. The statute also references proceedings pursuant to G. L. c. 201, §§ 5 and 14, which concern guardianships, including guardianships of minors. G. L. c. 119, § 29. In addition to the explicit right to counsel under § 29, parents facing termination of their parental rights have a right to counsel, including court-appointed counsel, pursuant to art. 10 of the Massachusetts Declaration of Rights. *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3 (1979). Cf. *Lassiter* v. *Department of*

Three amendments to § 29 are relevant to our analysis. First, in 1978, a parent and child's right to counsel was expanded from proceedings pursuant to G. L. c. 119, §§ 24-27, to include proceedings pursuant to G. L. c. 119, § 23 (C). St. 1978, c. 501. See note 12, *supra.* Second, in 1983, the phrase "and in any other proceeding regarding child custody where the department of social services or a licensed child placement agency is a party, including such proceedings under sections five and fourteen of chapter two hundred and one" was added to the *parent's* right to counsel under the statute. St. 1983, c. 517. Whether this phrase applies to parents in CHINS cases is at issue in this case. Third, St. 1984, c. 197, § 3, added G. L. c. 119, § 29B, to the list of the sections of G. L. c. 119 under which a child and a parent are entitled to court-appointed counsel.

a. *Meaning of "custody."* Concerning whether a CHINS proceeding involves child "custody" under G. L. c. 119, § 29, the department makes several arguments that a CHINS proceeding does not involve custody, including that the CHINS statute uses the word "commit," not "custody," to describe the removal of a child from his or her home; that, unlike in care and protection proceedings, parents are not declared unfit in CHINS proceedings, as the focus is on the child's behavior; and that CHINS proceedings are more analogous to delinquency proceedings. We are not persuaded.

General Laws c. 119, § 21, states in part:

> " 'Custody', shall include the following powers: — (1) to determine the child's place of abode, medical care and education; (2) to control visits to the child; (3) to consent to enlistments, marriages and other contracts otherwise requiring parental consent. In the event that the parent or guardian shall object to the carrying out of any power conferred by this paragraph, said parent or guardian may take application to the committing court and said court shall review and make an order on the matter."

Although G. L. c. 119, § 39G, uses the word "commit" instead

*Social Servs. of Durham County,* 452 U.S. 18, 24, 31-32 (1981) (no automatic right to appointed counsel for indigent parents facing termination of parental rights under Fourteenth Amendment to United States Constitution; courts must assess due process requirements on case-by-case basis).

of "custody," we conclude that what is at stake when a child is removed from his or her parent at the dispositional phase of a CHINS proceeding is custody within the meaning of § 29. At the dispositional phase of a CHINS proceeding, if the judge chooses to turn the child over to the department, the "custody order" itself gives legal custody to the department. See R.L. Ireland, Juvenile Law § 4.21 (2d ed. 2006) (form of order). A judge cannot conclude that a child should be committed to the department, unless he "make[s] the written certification and determinations required by [G. L. c. 119, §] 29C." G. L. c. 119, § 39G. Section 29C determinations are required not only in CHINS proceedings but also, inter alia, in care and protection proceedings pursuant to G. L. c. 119, §§ 24-26, where there is no doubt that custody is at stake. Moreover, the department's own regulations state that where a child is turned over to the department pursuant to a CHINS order, the department has custody. 110 Code Mass. Regs. §§ 2.00, 4.64-4.65, 11.02 (2005).

In addition, even though the focus of the proceeding is on the child's behavior, *Matter of Gail*, 417 Mass. 321, 326-327 (1994), and there is no declaration of parental unfitness as such in CHINS cases, a § 29C determination means that the judge must "certify that the continuation of the child in his home is contrary to his best interests." Thus a judge cannot focus *exclusively* on the child in making a § 29C determination. See, e.g., *Matter of Angela*, 445 Mass. 55, 56 (2005) (judge committed child to department where court clinician's evaluation indicated, inter alia, mother had limited insights into child's problems).

The CHINS statute, enacted in 1973, "signified a switch from criminalizing truancy and children in need of services to providing protective care for children." *Commonwealth* v. *Florence F.*, 429 Mass. 523, 527 (1999), citing St. 1973, c. 1073 (Juvenile Court has no power of contempt for violations of conditions of custody in CHINS cases). See G. L. c. 119, § 39E, first par. CHINS "proceedings retain many features of criminal trials." *Matter of Angela*, *supra* at 65. See, e.g., G. L. c. 119, § 39E, ninth par. (trial by jury); G. L. c. 119, § 39H (arrest of child); G. L. c. 119, § 39I (appeal; trial de novo). The department argues that those features should guide our decision whe-

ther custody of a child is at stake in a CHINS proceeding.[14] However, whatever the similarities between CHINS and delinquency proceedings, they are not enough to persuade us that actual custody of a child is not at stake at the dispositional phase of a CHINS proceeding. Our interpretation of the word "custody" is consistent with our previous cases where the court stated that the department has "custody" in CHINS cases. See, e.g., *Matter of Angela, supra* at 62 n.5, citing *Matter of Gail, supra* at 322; *D.L.* v. *Department of Social Servs.*, 412 Mass. 558, 560, 565 (1992).

b. *Meaning of "party."* Concerning whether the department is a "party" to a CHINS proceeding within the meaning of G. L. c. 119, § 29, the department contends that it is not a party unless it files the CHINS petition.[15] Nothing in the CHINS statute, G. L. c. 119, §§ 39E-39I, designates the department as a formal "party," but the statute does require that the department be given notice of every CHINS proceeding. G. L. c. 119, § 39E, sixth par. In addition, the statute allows a judge to transfer custody of a child to the department, G. L. c. 119, § 39G, first par. (c), and thus we conclude that, as a practical matter, the

[14]The department points out that in delinquency proceedings, the Department of Youth Services does not have authority over a delinquent child's medical care pursuant to 109 Code Mass. Regs. §§ 11.05, 11.12-11.17 (1993), and does not determine the place of abode. The department then argues that, because in CHINS cases the department cannot approve a child's extraordinary medical care, 110 Code Mass. Regs. §§ 11.02, 11.13-11.21 (1995), and cannot choose to reunite a child with his or her family if the court has ordered otherwise, CHINS cases are more like delinquency cases.

We note that the sections cited by the department concerning extraordinary medical care, 110 Code Mass. Regs. §§ 11.02, 11.13-11.21, do not apply solely to children in the department's care pursuant to a CHINS adjudication. 110 Code Mass. Regs. § 11.02. Moreover, G. L. c. 119, § 21, defines a parent or guardian's right to ask a court to issue an order concerning the powers the statute grants to the department when it has "[c]ustody" of a child, so the limits on the department in CHINS cases are not unique.

[15]In Hilary's case the department initiated the CHINS petition and thus does not contest its status as a party.

In Annamaria's case, the department filed a motion to intervene for the purpose of opposing E.K.'s motion to reconsider the denial of her motion to intervene and for counsel. In their brief, E.K. and L.R. argue that because the department did not oppose E.K.'s original motion, it cannot raise the issue on appeal. We do not address this argument because the substantive issue is capable of repetition.

department is a party to the proceeding within the meaning of G. L. c. 119, § 29, at the dispositional phase of a CHINS proceeding if custody is at issue.[16]

"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Matter of Angela, supra* at 58, quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70, 79-80 (1982) (where statute's draftsmanship lacks precision, court must give it reasonable construction). General Laws c. 119 is a "comprehensive child welfare chapter, declaring the Commonwealth's policy 'for the protection and care of children.' " *Custody of Lori*, 444 Mass. 316, 320 (2005), quoting G. L. c. 119, § 1. Part of that policy is evident in G. L. c. 119, § 29, the main purpose of which is to provide the right to counsel to both children and parents. As discussed, the statute was amended in 1978, 1983, and 1984. Each amendment expanded the situations where either a parent or child has the right to counsel, adding, respectively, Probate and Family Court proceedings pursuant to G. L. c. 119, § 23 (C); the "any other proceeding" language at issue here; and permanency plan hearings pursuant to G. L. c. 119, § 29B. This history indicates that, whatever the imprecision of the language used in either the 1983 amendment to § 29 or the statute as a whole, that language is consistent with the legislative purpose of § 29, that a parent has the right to counsel at the dispositional phase of a CHINS proceeding.[17] See generally *Kobrin* v. *Gastfriend*, 443 Mass. 327, 335 (2005), quoting *Quincy City Hosp.* v. *Rate Setting Comm'n*, 406 Mass.

---

[16]To the extent that language in *Matter of Angela*, 445 Mass. 55, 66 n.7 (2005), contradicts our holding concerning whether the department is a party at the dispositional phase of a CHINS proceeding pursuant to G. L. c. 119, § 29, it is mere dicta and we do not follow it.

[17]We note that 2007 Senate Doc. No. 113 proposes rewriting, inter alia, the CHINS statute. The Senate bill and the corresponding 2007 House Doc. No. 3466 contain provisions for the right to counsel for parents during CHINS proceedings.

431, 443 (1990) (statutes "interpreted . . . in connection with . . . prior legislation"). In addition, as discussed, where a child has had a CHINS adjudication and has been in the department's custody for more than twelve months, a permanency hearing must be held with the potential for the termination of parental rights, G. L. c. 119, § 29B, and pursuant to § 29, a parent has a right to appointed counsel at such a hearing. It is in keeping with the legislative intent of § 29 to provide appointed counsel at the dispositional stage of CHINS proceedings if the judge is considering awarding custody to the department.[18],[19]

5. *Conclusion.* For the reasons set forth above, we conclude that pursuant to G. L. c. 119, § 29, after a child is adjudicated a child in need of services, a parent is entitled to counsel at the dispositional phase of the proceeding if custody of the child could be granted to the department. We reverse the decision of the Worcester County Division of the Juvenile Court Department and remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

[18]In order for the right to counsel to be meaningful, parents obviously have the concomitant right to intervene in the case.

[19]If a judge finds a child to be a child in need of services, but is not considering removing custody of the child from the parents, counsel need not be appointed.