NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-588

GUARDIANSHIP OF KAYLA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The guardian, the child's maternal grandmother, appeals from a decree allowing the father's petition to terminate the guardianship of the child and resume parental duties. See G. L. c. 190B, § 5-212 (a). Following a three-day trial in the Probate and Family Court, the judge found the father fit to parent the child, terminated the guardianship, and awarded custody to the father.[2] On appeal, the guardian contends that the judge erred in finding the father fit to parent, as well as in denying the guardian's requests to appoint a guardian ad litem and to order visitation for the guardian. We see no abuse of discretion or error of law, and affirm.

1. Fitness. "[P]arents have a fundamental liberty interest in the care, custody, and management of their

---

[1] A pseudonym.
[2] The mother participated at trial but is not a part of this appeal.

children."  Matter of Hilary, 450 Mass. 491, 496 (2008).

Although a guardianship displaces a parent's rights, a parent

retains the right to "petition for removal of a guardian on the

ground that removal would be in the best interest of the ward."

G. L. c. 190B, § 5-212 (a).  See Guardianship of Kelvin, 94

Mass. App. Ct. 448, 453 (2018).  "The burden of proof rests with

the guardian to establish the [parent's] unfitness by clear and

convincing evidence."  Guardianship of Cheyenne, 77 Mass. App.

Ct. 826, 829 (2010).[3]  Unfitness is evidenced by "grievous

shortcomings or handicaps that would put the child's welfare

. . . much at hazard."  Petition of the New England Home for

Little Wanderers to Dispense with Consent to Adoption, 367 Mass.

631, 646 (1975).  In addition to proving unfitness, the guardian

must also show that continuation of the guardianship is in the

best interest of the child.  Guardianship of Kelvin, supra at

456.  We review the trial judge's decision for abuse of

discretion or clear error of law.  See Guardianship of Cheyenne,

supra at 829-830.

---

[3] The father originally consented to the guardianship and thus
had never been found unfit.  This relieved the father of the
burden to present evidence of changed circumstances since the
appointment of the guardian.  See Guardianship of Kelvin, 94
Mass. App. Ct. at 456.  Nevertheless, the judge credited the
father's subsequent efforts to attain sobriety as a change in
circumstances in favor of the father.

Here, there was no error in the judge's ruling that the guardian failed to meet her burden of proving the father unfit. The guardian argues that the father struggles with ongoing substance abuse issues, fails to meet the child's medical needs, and frightens the child, but the judge addressed each of these issues with detailed findings that were supported by the record. See Custody of Eleanor, 414 Mass. 795, 799 (1993). The judge found that after the father consented to the guardianship so that he could work on his sobriety, he promptly obtained mental health and addiction treatment, regularly provided negative drug tests, and had been sober for over one year at the time of the trial. The judge also considered that the father regularly visited the child in both supervised and unsupervised settings, and cared appropriately for the child by cooking, doing laundry, and helping with the child's schoolwork. The judge found that although the father had refused to attend a Zoom meeting with the child's doctor and had been asked to leave the child's pediatrician's office, these incidents were more indicative of the father's relationship with the guardian than the father's ability to care for the child. See Adoption of Querida, 94 Mass. App. Ct. 771, 778 (2019) (judge must confront "troublesome facts").

In considering the child's best interests, the judge also compared the child's behaviors while with each party. The judge

3

found that while the child was with the guardian, the child presented behavioral issues like biting and scratching and was afraid to go to her bedroom at night. The father testified that the child did not exhibit any of these behaviors while visiting him. In light of the detailed findings provided by the judge, we see no abuse of discretion in the judge's determination that the father was fit and that the best interests of the child would be served by terminating the guardianship.

2. Guardian ad litem. Prior to trial, the guardian unsuccessfully moved for appointment of a guardian ad litem to conduct an investigation of facts bearing on the father's petition and to make a report, with recommendations, to the court. The judge did not err in denying the motion, or in instead appointing a probation officer to conduct an investigation.

A judge has discretion in deciding whether to appoint a guardian ad litem or other appropriate person to investigate facts. See G. L. c. 215, § 56A; Ruml v. Ruml, 50 Mass. App. Ct. 500, 513 (2000). Here, the judge ordered the probation department to investigate and report on the issues surrounding the custody of the child. The nature of the scope of the investigation, as well as the person chosen to conduct it, fell squarely within the permissible discretion of the trial judge. See Hayden v. Hayden, 15 Mass. App. Ct. 915, 916 (1993). In

4

addition, a wide variety of pertinent witnesses, including the father, the guardian, the probation officer, and multiple other witnesses familiar with the child's circumstances, were available to testify at the trial, and statements by the child were available in the record.[4]  Presented with all this information on which to base her decision, the judge did not err in appointing a probation officer, or in declining the guardian's request to appoint a guardian ad litem, to conduct the investigation.

3.  Visitation.  Nor did the judge abuse her discretion in declining to order visitation time for the guardian with the child.  Although the judge recognized that the child and the guardian shared a close relationship, the judge credited the testimony of the mother that she would allow the guardian access to the child during the mother's parenting time.[5]  Contrary to the guardian's assertion, the mother plainly testified that she would allow the guardian access to the child on alternate

_____

[4] To the extent that the guardian mentions her unsuccessful attempts at trial to introduce statements by the child's therapist and a video recording containing statements by the child, her brief does not explain how this was reversible error. See Donovan v. Gardner, 50 Mass. App. Ct. 595, 602 (2000) (conclusory statements in brief "do not rise to the level of appellate argument").

[5] The judge similarly declined to order visitation for the paternal grandparents, where the father testified that they would have access to the child during his parenting time since he would be living with them.

weekends if the guardian did not have her own visitation time. See Adoption of Quentin, 424 Mass. 882, 886 (1997) ("the judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference" [citation omitted]). See also Troxel v. Granville, 530 U.S. 57, 66 (2000) (parents have a fundamental right to "make decisions concerning the care, custody, and control of their children").  Although the guardian had been the child's primary caregiver for several years, the child also had an ongoing relationship with the father, with the father regularly visiting and appropriately caring for the child.  Compare Youmans v. Ramos, 429 Mass. 774, 784 (1999) (guardian was entitled to visitation where guardian was "only family [the child] knows").  The judge therefore did not err in ordering visitation only to the father and the mother.  See id. at 781 (controlling consideration in custody proceedings is the welfare of the child).

Decree affirmed.

By the Court (Green, C.J.,
   Ditkoff & Hodgens, JJ.[6]),

Joseph F. Stanton
Clerk

Entered:  August 29, 2023.

---

[6] The panelists are listed in order of seniority.

6